UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

KEVIN L. JOHNSTON                           :
                                            :
        v.                                  :        C.A. No. 09-167S
                                            :
URBAN LEAGUE OF RHODE                       :
ISLAND, INC. and DENNIS B.                  :
LANGLEY                                     :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

        Plaintiff, Kevin L. Johnston, initiated this action on April 8, 2009 against his former employer, the

Urban League of Rhode Island, Inc. and his former supervisor, Dennis B. Langley – the Urban League's CEO

– in his individual capacity.   Plaintiff asserts state and federal statutory claims of gender and race

discrimination, and retaliation.

        Mr. Langley moves to dismiss all claims against him arguing that none of the statutes sued under

provide for individual liability.  (Document No. 8).  Plaintiff opposes the Motion.  (Document No. 10).  The

Urban League has answered Plaintiff's Complaint.  (Document No. 6).  Mr. Langley's Motion to Dismiss has

been referred to me for preliminary review, findings and recommended disposition.  See 28 U.S.C. §

636(b)(1)(B); LR Cv 72.

        **Discussion**

        **A.      Title VII**

        Counts III, IV and VI allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e, et seq.  Plaintiff alleges discriminatory failure to promote (Count III), retaliation (Count IV) and

disparate impact (Count VI).  Plaintiff does not contest Mr. Langley's Motion to Dismiss as to these Title VII

claims (Counts III, IV and VI) based on the First Circuit's recent ruling in Fantini v. Salem State Coll., 557

F.3d 22 (1st Cir. 2009).

In <u>Fantini</u>, the First Circuit squarely addressed the issue of individual liability under Title VII for the first time. <u>Id.</u> at 28. It affirmed the dismissal of Title VII claims against two individuals holding that "there is no individual employee liability under Title VII." <u>Id.</u> at 31.

Under Title VII, the term "employer" is defined in relevant part as "a person engaged in an industry affecting commerce who has fifteen or more employees..., and any agent of such a person...." 42 U.S.C. § 2000e(b). The issue decided in <u>Fantini</u> was whether the latter part of this definition or the "agents" clause provides for individual employee liability for violations of Title VII. The First Circuit followed the majority of the Circuits and agreed that the "agents" clause did not establish individual liability of supervisors or coworkers and was intended to incorporate respondeat superior liability into Title VII. <u>Fantini</u>, 557 F.3d at 30-31. It also reasoned that Congress' exclusion of small employers (those with fewer than fifteen employees) from Title VII coverage was inconsistent with imposing individual employee liability. <u>Id.</u> (citing <u>Lissau v. S. Food Servs., Inc.</u>, 159 F.3d 177, 180 (4th Cir. 1998) (finding that it would be "incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company."). Finally, it noted that Title VII's remedial scheme, which includes relief such as reinstatement and ties the level of damages to the size of the employer, suggests that Congress only intended employers to be liable for Title VII violations. <u>Id.</u> at 31.

Based on <u>Fantini</u>, I recommend that Mr. Langley's Motion to Dismiss be GRANTED as to the Title VII claims brought against him individually in Counts III, IV and VI.

**B.       Rhode Island Fair Employment Practices Act**

Counts I, II and V allege violations of Rhode Island's Fair Employment Practices Act ("RIFEPA"), R.I. Gen. Laws § 28-5-1, <u>et seq.</u> As with the Title VII claims, Plaintiff alleges discriminatory failure to promote (Count I), retaliation (Count II) and disparate impact (Count V).

Prior to <u>Fantini</u>, the law in this District was clear that supervisors such as Mr. Langley were subject to individual liability under both Title VII and RIFEPA. <u>See</u> <u>Iacampo v. Hasbro, Inc.</u>, 929 F. Supp. 562

(D.R.I. 1996); and <u>Wyss v. Gen. Dynamics Corp.</u>, 24 F. Supp. 2d 202 (D.R.I. 1998).[1]  As noted above, the law has shifted based on <u>Fantini</u> at least as to Title VII claims.  However, there is an open issue as to whether the reasoning in <u>Fantini</u> should be extended to the scope of liability under RIFEPA.

The Rhode Island Supreme Court has not yet opined on the issue of individual liability under RIFEPA.  In <u>Evans v. R.I. Dep't of Bus. Regulation</u>, No. Civ. A. 01-1122, 2004 WL 2075132 at *3 (R.I. Super. Aug. 21, 2004), Justice Alice Gibney followed Judge Lagueux's decision in <u>Iacampo</u> to find individual liability under RIFEPA.  However, the decision in <u>Iacampo</u> was based primarily on the analogous determination that individual liability also existed under Title VII.  <u>See</u> <u>Iacampo</u>, 929 F. Supp. at 571-573.  "FEPA is intended to be Rhode Island's analog to Title VII and the Rhode Island Supreme Court has applied the analytical framework of federal Title VII cases to FEPA."  <u>Eastridge v. Rhode Island Coll.</u>, 996 F. Supp. 161, 169 (D.R.I. 1998).  Accordingly, since <u>Fantini</u> is now the law as to the scope of Title VII liability, the issue of individual liability under RIFEPA should be revisited in this District.

The starting point for analyzing the issue of individual liability under RIFEPA is its definition of employer.  Under RIFEPA, an "employer" is defined as "any person...employing four (4) or more individuals, and any person acting in the interest of an employer directly or indirectly."  R.I. Gen. Laws § 28-5-6(7)(i).  Although not identical, there are substantial parallels in the definitions of employer under Title VII and RIFEPA.  First, both start with a numerical threshold which is intended to exclude small employers from coverage.  The coverage trigger in RIFEPA is four employees and in Title VII is fifteen employees.  Second, both contain an "agents" clause.  While Title VII expressly uses the term "agent," RIFEPA's definition of employer includes the phrase "and any person acting in the interest of an employer directly or indirectly."  This phrase in RIFEPA defines an agency relationship in the employer/employee context.  <u>Cf.</u> <u>Lawrence v. Anheuser-Bush, Inc.</u>, 523 A.2d 864, 867 (R.I. 1987) (defining an agency relationship as "the fiduciary

---

[1]  In reaffirming his decision to follow the minority view as to individual liability under Title VII, then Chief Judge Lagueux of this District noted that "[t]he majority of circuits has lined up like the children of Hamelin behind an unwarranted judicial rewriting of a clear statute."  <u>Lynch v. Orthopedic Group, Inc.</u>, No. 98-121L, 1998 WL 34101009 at *1 (D.R.I. Oct. 30, 1998).  Since the First Circuit has joined that line, <u>Fantini</u> is now the law in this District.

relation which results from the manifestation of consent by one person [the principal] to another that the other [the agent] shall act on his behalf and subject to his control").  Finally, both RIFEPA and Title VII authorize remedies such as hiring and reinstatement that could only be implemented by an employer and not an individual employee who may or may not still be employed by the subject employer when damages are awarded.  See FUD's Inc. v. State, 727 A.2d 692, 695-696 (R.I. 1999) (discussing remedies available under RIFEPA at R.I. Gen. Laws §§ 28-5-24(a) and - 24.1(d)).  In view of these statutory parallels, it makes no sense to interpret Title VII to exclude individual liability and RIFEPA to include it.  Thus, applying the reasoning of Fantini, I conclude that the definition of employer under RIFEPA does not provide a basis for individual employee liability.  This result is also consistent with the Rhode Island Supreme Court's well-established principle of looking to Title VII jurisprudence in interpreting RIFEPA.  See Newport Shipyard, Inc. v. R.I. Comm'n for Human Rights, 484 A.2d 893, 897-900 (R.I. 1984); and Narragansett Elec. Co. v. R.I. Comm'n for Human Rights, 374 A.2d 1022, 1023 (R.I. 1977) (Parallels between Title VII and RIFEPA make it "appropriate...to refer to federal decisions dealing with Title VII" in interpreting RIFEPA.).

RIFEPA outlaws certain unlawful employment practices delineated in R.I. Gen. Laws § 28-5-7. Although several are defined in terms of "employer" conduct, "the language in RIFEPA provides an independent ground for individual liability [which] is broader than Title VII." Wyss, 24 F. Supp. 2d at 210. In particular, R.I. Gen. Laws § 28-5-7(b) extends beyond employers and makes it an unlawful employment practice for "any person, whether or not an employer...or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful employment practice." Id. (emphasis added).[2]

Here, Plaintiff alleges that Mr. Langley was the "CEO" of the Urban League and "acted in a supervisory capacity over [him]." (Document No. 1, ¶¶ 3, 8).  In his RIFEPA counts, Plaintiff does not cite specifically to any provisions of RIFEPA.  Plaintiff states his RIFEPA counts jointly against the "Defendants"

_____

[2] R.I. Gen. Laws § 28-5-7(6) also makes it unlawful for a person, whether or not an employer, "to obstruct or prevent any person from complying" with RIFEPA or "to attempt directly or indirectly to commit any act declared...to be an unlawful employment practice."

and makes no effort to differentiate their actions.  Count I alleges that "Defendants" violated RIFEPA by discriminatorily failing to promote Plaintiff based on his race and gender.  Count II alleges that "Defendants" violated RIFEPA by retaliating against Plaintiff for filing a discrimination charge.  Count V alleges that "Defendants" violated RIFEPA by disparately impacting his employment opportunities on the basis of race. In other words, Plaintiff alleges that both the Urban League and Mr. Langley together discriminated and retaliated against him in violation of RIFEPA.  He does not allege that Mr. Langley did so indirectly by aiding, abetting, inciting, compelling or coercing his employer, the Urban League, to commit an unlawful employment practice.  Thus, I conclude that Plaintiff has not presently plead a claim against Mr. Langley under R.I. Gen. Laws § 28-5-7(6) and recommend that Mr. Langley's Motion to Dismiss be GRANTED as to the RIFEPA claims (Counts I, II and V) brought against him individually.  However, given the recently evolving nature of the law on the issue of supervisory liability under Title VII and now RIFEPA, I further recommend that such dismissal be granted with leave to amend if Plaintiff wants to attempt to state a claim against Mr. Langley under R.I. Gen. Laws § 28-5-7(6).

  **C.**  **Rhode Island Whistleblower's Protection Act**

   In Count VII, Plaintiff alleges that Defendants violated the Rhode Island Whistleblower's Protection Act ("RIWPA"), R.I. Gen. Laws § 28-50-1, et seq.  Mr. Langley moves to dismiss Count VII as to him arguing that the RIWPA was intended to apply only to "employers" and is not applicable against individual employees such as himself.

   Neither side cites any case law construing the RIWPA on this issue and there does not appear to be any in existence.  Thus, my review is confined to a plain reading of RIWPA.  RIWPA defines an "employee" as one "employed by any employer."  R.I. Gen. Laws § 28-50-2(1).  An "employer" is defined to include "any person,[3] partnership, association, sole proprietorship, corporation or other business entity" and that "one shall

---

[3] A person is further defined to include an individual.  R.I. Gen. Laws § 28-50-2(3).

employ another if services are performed for wages or under any contract of hire, written or oral, express or implied." R.I. Gen. Laws § 28-50-2(2).

RIWPA outlaws certain retaliatory conduct committed by an "employer." R.I. Gen. Laws § 28-50-3. Thus, the issue once again presented is whether a supervisor such as Mr. Langley is subject to individual liability under RIWPA. While it is true that an individual person can be an "employer" under RIWPA, it does not follow that a supervisor is an "employer" simply because they are individual "persons." Under RIWPA, an employer employs another when "services are performed for wages or under any contract of hire, written or oral, express or implied." R.I. Gen. Laws § 28-50-2(2). Plaintiff does not allege that Mr. Langley was his employer. His Complaint makes clear that he was formerly employed by the Urban League and Mr. Langley was his supervisor. (Document No. 1, ¶¶ 3, 8, 9 and 34). In RIWPA, the General Assembly distinguished between an "employer" and a "supervisor." RIWPA defines a "supervisor" as "any individual to whom an employer has given the authority to direct and control the work performance of the affected employee or any individual who has the authority to take corrective action regarding the violation of a law, rule or regulation about which the employee complains." R.I. Gen. Laws § 28-50-2(5).

Nowhere in RIWPA does it provide for supervisor liability and I conclude that the General Assembly did not intend to provide for such liability under RIWPA. See Ahanotu v. Mass. Tpk. Auth., 466 F. Supp. 2d 378, 396 (D. Mass. 2006) (finding no individual liability of supervisors under analogous provisions of Massachusetts Whistleblower Statute); Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 221 (D. Mass. 2002) (same); and Orell v. UMass Mem'l Med. Ctr., Inc., 203 F. Supp. 2d 52, 66-67 (D. Mass. 2002). A supervisor is defined in RIWPA because one of the bases for liability is when an "employer" takes adverse action against an employee because the employee reported a violation of the law to "the employee's supervisor." R.I. Gen. Laws § 28-50-3(4). Thus, it is important to delineate who is considered a supervisor for such purposes. The General Assembly drew a distinction between an employer and a supervisor, and chose only to provide a

cause of action for certain retaliatory action against an "employer."  See R.I. Gen. Laws § 28-50-3.[4]  Further, as with Title VII and RIFEPA, the available remedies under RIWPA are inconsistent with imposing individual supervisory liability.  These remedies include job, benefit and seniority reinstatement.  R.I. Gen. Laws § 28-50-5.  Such remedies can only be implemented by an employer and not an individual employee who may or may not still be employed by the subject employer when damages are awarded.

Thus, I recommend that Mr. Langley's Motion to Dismiss be GRANTED as to the RIWPA claim brought against him individually in Count VII.

**Conclusion**

For the foregoing reasons, I recommend that Mr. Langley's Motion to Dismiss be GRANTED as to Counts III, IV, VI and VII and GRANTED with leave to amend as to Counts I, II and V as provided herein. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 8, 2009

---

[4]  While an individual employee cannot be held personally liable under RIWPA, an "employer" can be held liable for its employees' violations if committed within the scope of employment under the principle of respondeat superior liability.  See Drake v. Star Mkt. Co., Inc., 526 A.2d 517, 519 (R.I. 1987); and Estate of Perry v. Green Card, Inc., No. PC/03-4671, 2006 WL 3479056 at *11 (R.I. Super. 2006).